# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | : | **MDL NO. 1871** |
| | : | **07-md-1871** |
| | : | |
| **THIS DOCUMENT RELATES TO:** | : | |
| | : | |
| *Ayala-Castro, et al. v. GlaxoSmithKline, et al.* | : | **2:08-cv-05116** |
| | : | |
| *Bone, et al. v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-01726** |
| | : | |
| *Boone v. GlaxoSmithKline, et al.* | : | **2:08-cv-01981** |
| | : | |
| *Bowles, et al. v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-01733** |
| | : | |
| *Cross, et al. v. GlaxoSmithKline, et al.* | : | **2:08-cv-05227** |
| | : | |
| *Fisher v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-01729** |
| | : | |
| *Hall v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-01727** |
| | : | |
| *Hefner, et al. v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-01732** |
| | : | |
| *Jefferson v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-01728** |
| | : | |
| *Johnson, et al. v. GlaxoSmithKline, et al.* | : | **2:08-cv-00835** |
| | : | |
| *Khanna v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-02884** |
| | : | |
| *Massey, et al. v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-04981** |
| | : | |
| *Mick v. GlaxoSmithKline plc, et al.* | : | **2:08-cv-05019** |
| | : | |
| *Mitchell, et al. v. GlaxoSmithKline, et al.* | : | **2:08-cv-04235** |

|  | : |  |
| --- | --- | --- |
| ***Thornton v. SmithKline Beecham Corp. d/b/a*** | : | **2:08-cv-01730** |
| ***GlaxoSmithKline, et al.*** | : |  |
|  | : |  |
| ***Upshaw v. SmithKline Beecham Corp. d/b/a*** | : | **2:08-cv-01731** |
| ***GlaxoSmithKline, et al.*** | : |  |
|  | : |  |
| ***Williams, et al. v. GlaxoSmithKline, et al.*** | : | **2:08-cv-02943** |
|  | : |  |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                              **February 25, 2009**

         The seventeen above-captioned individual actions have been transferred to a

multidistrict litigation ("MDL") docket established[1] to consolidate, for purposes of coordinated

pretrial proceedings, cases in federal court that "arise from allegations that certain diabetes drugs

manufactured by [Defendant SmithKlineBeecham Corp. d/b/a GlaxoSmithKline ("GSK")] —

Avandia and/or two sister drugs containing Avandia (Avandamet and Avandaryl)[2] — cause an

increased risk of heart attack and other physical injury, and that GSK failed to provide adequate

warnings concerning that risk."[3]   Hundreds of actions have been transferred or filed directly into

this MDL since its creation.  Plaintiffs in the seventeen above-captioned cases bring strictly state

law claims against GSK and other defendants.  Each action was filed in state court, removed to

federal court by GSK on an assertion of diversity jurisdiction, and with the exception of one

---

         [1] The MDL was established by the United States Judicial Panel on Multidistrict Litigation pursuant to 28
U.S.C. § 1407.  The MDL was assigned to this Court in October, 2007.

         [2] Hereinafter, the Court refers to Avandia, Avandaryl and Avandamet collectively as "Avandia".

         [3] October 16, 2007 Transfer Order of the United States Judicial Panel on Multidistrict Litigation, at *2
[Doc. No. 1].

2

action, federal question jurisdiction as well,[4] and then transferred to this MDL.  Prior to transfer,

a motion to remand was filed in each action in the transferor federal district court.  After transfer,

each such motion was re-filed or re-noticed here.  These seventeen remand Motions are presently

before the Court.  For the reasons that follow, fifteen Motions will be granted and two denied.

## I.  BACKGROUND

The Court heard oral argument as to all but one of the instant Motions on

September 26, 2008.[5]  Briefing on the Motions is complete, including supplemental briefing

permitted after oral argument.  The parties' arguments in each of the cases at issue are reviewed

below.

### A.  The California Cases

**1.  Ayala-Castro, et al., 2:08-cv-05116**

This action was originally filed in the Superior Court of the State of California for

the County of San Bernadino by sixteen individual plaintiffs grouped in eight husband-and-wife

couples.  All Plaintiff couples bring identical state law claims.  Ayala-Castro and her husband are

citizens of California.  No other Plaintiff is a citizen of either California or Pennsylvania.

The named Defendants are GSK and McKesson Corporation ("McKesson").[6]

---

[4] Defendant asserts diversity jurisdiction, but does not assert federal question jurisdiction, as a basis for its removal of Mick v. GlaxoSmithKline plc, et al., No. 2:08-cv-05019.

[5] Argument was not presented as to the motion to remand in Massey et al. v. SmithKlineBeecham Corp. d/b/a GlaxoSmithKline, et al., because the case had not yet been filed in this Court and because it involves somewhat different contentions than the argued cases.  As a separate matter, the Court notes that a motion to remand in the case Cox v. SmithKlineBeecham Corp. d/b/a GlaxoSmithKline, et al., No. 2:08-cv-04238, which was fully briefed and slated for argument at the hearing on September 26, 2008, was orally withdrawn by Plaintiff's counsel at the hearing and subsequently dismissed as withdrawn.  See Doc. No. 223.

[6] The complaint also names as Defendants "Does 1-50", but this inclusion is not relevant to the remand analysis.  See Sec. 1441(a).

GSK is a pharmaceutical developer and manufacturer incorporated under Pennsylvania law with its principal place of business in Pennsylvania, and McKesson is a Delaware Corporation engaged in drug distribution with its principal place of business in California. After accepting service of process, GSK and McKesson removed the action to the United States District Court for the Central District of California, Eastern Division - Riverside, on May 7, 2008, claiming both diversity and federal question jurisdiction.[7] The action was transferred from that court to this MDL on October 14, 2008.

In their Motion, Plaintiffs argue the case must be remanded pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. In particular, they argue that their claims do not implicate sufficiently substantial questions of federal law to support federal question jurisdiction and that there is not complete diversity of citizenship between the parties because McKesson is a California citizen. They also argue removal is prohibited by the "forum defendant rule" of 28 U.S.C. § 1441(b), which bars removal premised on diversity jurisdiction if any "properly joined and served" defendant is a citizen of the forum state, as McKesson is here.

GSK counters that federal question jurisdiction exists over this action because Plaintiffs' exclusively state law claims raise substantial questions of federal law. Referring to one of the counts of the Complaint, GSK asserts that "the principal federal issue . . . is whether a plaintiff can recover against McKesson for negligent failure to warn where federal law clearly

---

[7] Defendants additionally argued that the removal satisfied all requirements for removal set forth in the Class Action Fairness Act of 2005 ("CAFA"), as found under 28 U.S.C. § 1332(d), but also acknowledged that Plaintiffs had expressly stated in the Complaint that the action was not a class action. From extensive subsequent briefing and argument by the parties relating to this action and others in which CAFA initially was raised as a potential basis for removal (e.g., Johnson, et al., No. 2:08-cv-00835; Mitchell, et al., No. 2:08-cv-04235), it is clear that the parties have abandoned this line of argument, and accordingly, the Court will not address it further.

prohibits the distributor from altering the manufacturer's label."[8]  McKesson aside, GSK also asserts that federal question jurisdiction exists because Plaintiffs' claims require the Court to construe and apply the Federal Food, Drug and Cosmetic Act ("FDCA")[9] and its implementing regulations.  There is at least one such claim in the Complaint.[10]

        With respect to diversity jurisdiction, GSK acknowledges, as it must, that McKesson is a California citizen, as are two of the plaintiffs.  However, GSK argues that the citizenship of McKesson must be disregarded because it was fraudulently joined as a defendant. GSK asserts that McKesson's joinder was both factually and legally fraudulent – factually because certain early evidence shows that specific Plaintiffs in cases filed in California state court did not receive Avandia distributed by McKesson, and legally because California law does not allow liability for drug distributors under the causes of action asserted by Plaintiffs.  GSK argues Plaintiffs' naming of McKesson as a defendant was a sham designed to thwart federal jurisdiction. If McKesson's citizenship is so ignored, complete diversity exists among the parties. Defendants also contend that the forum defendant rule does not require remand, asserting that McKesson's citizenship is to be ignored in this analysis as well because of its purportedly fraudulent joinder.  As a third argument, GSK asserts that Plaintiffs are fraudulently misjoined, and that their claims should be severed and considered separately as a result.

---

[8] Def.'s Mem. On Federal Question Jurisdiction, at *3 [Doc. No. 231].  This argument is the primary basis for GSK's claim of federal question jurisdiction in each case naming McKesson as a party in interest.

[9] 21 U.S.C. § 301 et seq. ("FDCA").

[10] The Third Count of Plaintiffs' Complaint, "Negligence - Failure to Warn," explicitly refers to the FDCA as well as certain implementing administrative regulations.

**2. Bone, et al., 2:08-cv-01726**

In this action, originally filed in the Superior Court of the State of California for the County of San Francisco, eleven unrelated Plaintiffs bring identical state law claims against GSK and McKesson.  One plaintiff, Jesus Cota ("Cota"), is a California citizen, and another, Barron Gatta ("Gatta"), is a Pennsylvania citizen.  The citizenship of two other Plaintiffs also bears noting, that of Laviola Townsend of Illinois, and Dorothy Bone of Alabama.

After both Defendants were served, GSK removed the action to the United States District Court for the Northern District of California, San Francisco Division on November 20, 2007, claiming both federal question and diversity jurisdiction.  McKesson consented to removal. The action was subsequently transferred from that court and filed in this MDL on April 11, 2008.

Plaintiffs move for remand on the ground that subject matter jurisdiction is lacking.  They contend that because Cota and McKesson are both citizens of California, and Gatta and GSK are both citizens of Pennsylvania, diversity of citizenship is doubly defeated. Also, for the reasons reviewed in the Ayala-Castro case summary, above, Plaintiffs argue that the forum defendant rule bars removal and that federal question jurisdiction does not lie.

GSK opposes remand, arguing that federal question jurisdiction exists as to all Plaintiffs, and that diversity jurisdiction exists as to all Plaintiffs except Gatta.  Its arguments with respect to federal question jurisdiction are the same as those reviewed in the Ayala-Castro summary, above.  As to diversity jurisdiction, GSK argues that McKesson was fraudulently joined as a defendant, such that its citizenship should be ignored in the diversity analysis.  In this connection, GSK notes that early discovery shows that Townsend, Bone and Gatta did not ingest Avandia distributed by McKesson.  Because McKesson was fraudulently joined, its citizenship

should also be ignored when the Court evaluates the application of the forum defendant rule, GSK argues. Finally, GSK argues Plaintiffs are fraudulently misjoined, such that the Court should sever and remand the claims of Pennsylvania citizen Gatta and retain jurisdiction over the remainder of the case.

**3. Boone, 2:08-cv-01981**

Plaintiff Leslie Boone ("Boone") originally filed this action in the Superior Court of California for the County of Los Angeles. Boone is a citizen of Nevada. He brings identical state law claims against GSK, McKesson and 50 "Doe" defendants.

After service of process was made upon both Defendants, GSK and McKesson removed the case to the United States District Court for the Central District of California, Western Division – Los Angeles, on the basis of both federal question and diversity jurisdiction. The case was transferred from that court and filed in this MDL on April 29, 2008.

Plaintiff moves for remand, invoking the forum defendant rule and an absence of federal question jurisdiction. Defendants counter that McKesson is fraudulently joined, so that its citizenship must be ignored for purposes of the forum defendant rule. If removal is found to be proper on this basis, diversity of citizenship jurisdiction exists over the action. Defendants alternatively argue that Plaintiff's state law claims raise substantial issues of federal law, conferring federal question jurisdiction over the action. Defendants' fraudulent joinder and federal question arguments are identical to those reviewed in the Ayala-Castro case summary, above.

**4. Bowles, et al., 2:08-cv-01733**

This action was originally filed in the Superior Court of the State of California for

7

the County of San Francisco by twelve unrelated Plaintiffs bringing identical state law claims against GSK and McKesson.  One plaintiff, Ann McGary ("McGary"), is a California citizen. The citizenship of three other Plaintiffs bears noting: Samuel Cantey is a citizen of South Carolina ("Cantey"); Alan Orlomoski is a citizen of Connecticut ("Orlomoski"); and Jerlean Conway is a citizen of Louisiana ("Conway").

After McKesson accepted service of process but before GSK was served, GSK removed this case to the United States District Court for the Northern District of California, San Francisco Division, on December 13, 2007, on the basis of federal question and diversity jurisdiction.  McKesson consented to removal.  The action was transferred from that Court and filed in this MDL on April 11, 2008.

Plaintiffs move for remand for lack of subject matter jurisdiction.  They contend that because McGary and McKesson are both citizens of California, diversity is absent.  They further contend that the forum defendant rule prohibits removal of this action on the basis of diversity jurisdiction.  Also, for the reasons reviewed in the <u>Ayala-Castro</u> case summary, above, Plaintiffs argue that federal question jurisdiction does not lie in this matter.

GSK argues remand is improper because both federal question and diversity jurisdiction exist as to all Plaintiffs.  Its arguments with respect to federal question and diversity jurisdiction are the same as those reviewed in the <u>Ayala-Castro</u> summary, above.  In connection with its argument that McKesson is fraudulently joined and so to be disregarded in the diversity evaluation, GSK notes that early discovery shows that Cantey, Orlomoski and Conway did not ingest Avandia distributed by McKesson.  GSK also argues that because McKesson was fraudulently joined, its citizenship must be ignored in the forum defendant rule analysis.  Finally,

GSK argues Plaintiffs are fraudulently misjoined, such that the Court should sever the claims of each Plaintiff from those of Bowles for separate consideration.

**5.  Cross, et al., 2:08-cv-05227**

This action was originally filed in the Superior Court of the State of California for the County of Los Angeles by thirty-two unrelated Plaintiffs bringing identical state law claims against GSK, McKesson and 100 "Doe" defendants.  Numerous Plaintiffs are California citizens ("California Plaintiffs").  One Plaintiff, Betty Riley, is a citizen of Pennsylvania ("Riley").

Before any Defendant was served, GSK removed this case to the United States District Court for the Central District of California, Western Division - Los Angeles, on March 24, 2008, on the basis of both federal question and diversity jurisdiction.  GSK asserted that McKesson's consent to the removal was not necessary since it had not been served.  The action was transferred from that Court and filed in this MDL on November 3, 2008.

Plaintiffs move for remand for lack of subject matter jurisdiction.  Pointing to the California citizenship of the California Plaintiffs and McKesson, and the Pennsylvania citizenship of Riley and GSK, they assert that the parties are non-diverse.  Plaintiffs also assert that the forum defendant rule bars removal premised on diversity jurisdiction notwithstanding the fact that McKesson was not served prior to removal from California court.  And for the reasons reviewed in the Ayala-Castro case summary, above, Plaintiffs argue that there is no basis for federal question jurisdiction over this matter.

GSK argues remand is improper because federal question jurisdiction lies as to the entire action and alternatively, that diversity jurisdiction lies as to each Plaintiff except Pennsylvania citizen Riley, who should be severed.  Its arguments with respect to federal

question are the same as those reviewed in the Ayala-Castro summary, above.  GSK further argues that because McKesson was fraudulently joined, its citizenship must be ignored in the Court's diversity jurisdiction and forum defendant rule analyses.  Finally, it contends that the Court should sever Plaintiffs' claims as fraudulently misjoined, thus separating the action brought by Riley and permitting the Court to retain jurisdiction over the remainder of the cases.

**6.  Fisher, 2:08-cv-01729**

Plaintiff George Fisher ("Fisher") originally filed this action in the Superior Court of California for the County of San Francisco.  Fisher is a citizen of Texas.  He brings exclusively state law claims against GSK and McKesson.

After both Defendants were served, GSK removed the case to the United States District Court for the Northern District of California, San Francisco Division, on the basis of federal question and diversity jurisdiction.  McKesson consented to removal.  The case was transferred from that court and filed in this MDL on April 11, 2008.

The arguments of the parties with respect to remand are essentially identical to those reviewed in the Boone case summary, above.  Thus, Plaintiff argues that remand is required because the forum defendant rule bars removal on the basis of diversity jurisdiction and because federal question jurisdiction is absent.  GSK counters that McKesson is fraudulently joined, and therefore its citizenship must be ignored in the forum defendant rule analysis.  If removal is found to be procedurally proper in this fashion, diversity jurisdiction exists over the action.  Alternatively, GSK argues that Fisher's state law claims raise substantial issues of federal law, conferring federal question jurisdiction.  Defendant's fraudulent joinder and federal question arguments are identical to those reviewed in the Ayala-Castro case summary, above.

**7. <u>Hall</u>, 2:08-cv-01727**

Plaintiff James Hall ("Hall"), a citizen of South Carolina, originally filed this action in the Superior Court of California for the County of San Francisco. Hall brings identical state law claims against GSK and McKesson.

After both Defendants received service of process, GSK removed the case to the United States District Court for the Northern District of California, San Francisco Division, on the basis of federal question and diversity jurisdiction. McKesson consented to removal. The case was transferred from that court and filed in this MDL on April 11, 2008.

The arguments of the parties with respect to remand are in all material respects identical to those reviewed in the <u>Fisher</u> and <u>Boone</u> case summaries, above. Thus, Plaintiff moves for remand, contending the forum defendant rule renders removal on the basis of diversity of citizenship procedurally improper, and that federal question jurisdiction does not lie over this action. GSK counters that McKesson is fraudulently joined, and therefore its citizenship must be ignored for purposes of the forum defendant rule. If removal is found to be procedurally proper on this basis, diversity jurisdiction exists over the action. Alternatively, GSK argues that Hall's state law claims raise substantial issues of federal law that give rise to federal question jurisdiction. Defendant's fraudulent joinder and federal question arguments are identical to those reviewed in the <u>Ayala-Castro</u> case summary, above.

**8. <u>Hefner, et al.</u>, 2:08-cv-01732**

Two unrelated Plaintiffs, citizens of Louisiana and Alabama, respectively, originally filed this action in the Superior Court of California for the County of San Francisco. Plaintiffs bring identical state law claims against GSK and McKesson.

Before either Defendant was served with the Complaint, GSK removed the case to the United States District Court for the Northern District of California, San Francisco Division, on the basis of federal question and diversity jurisdiction. GSK asserted McKesson's consent to removal was unnecessary since McKesson had not been served. The case was transferred from that court and filed in this MDL on April 11, 2008.

Plaintiffs move for remand, arguing that the forum defendant rule renders removal on the basis of diversity of citizenship procedurally improper, and that federal question jurisdiction does not lie over this action. GSK counters that the forum defendant rule is inapposite because neither Defendant had been "properly . . . served" at the time of removal, as would be required to trigger the strictures of 28 U.S.C. § 1441(b). GSK adds that McKesson's citizenship must be ignored for purposes of the forum defendant rule in any event because it is fraudulently joined. Alternatively, GSK asserts that Plaintiffs' state law claims raise substantial issues of federal law that give rise to federal question jurisdiction, an argument identical to that made in other cases and reviewed more thoroughly in the <u>Ayala-Castro</u> case summary, above.

**9. <u>Jefferson</u>, 2:08-cv-01728**

Plaintiff James Jefferson ("Jefferson"), a citizen of North Carolina, originally filed this action in the Superior Court of California for the County of San Francisco. Jefferson brings identical state law claims against GSK and McKesson.

After service of process was made upon both Defendants, GSK removed the case to the United States District Court for the Northern District of California, San Francisco Division, on the basis of federal question and diversity jurisdiction. McKesson consented to removal. The case was transferred from that court and filed in this MDL on April 11, 2008.

The arguments of the parties with respect to remand are in all material respects identical to those reviewed in the Hall case summary, above, and will not be restated here.

**10. Johnson, et al., 2:08-cv-00835**

This action was originally filed in the Superior Court of the State of California for the County of Riverside by eight plaintiffs bringing identical state law claims against GSK, McKesson and 500 "Doe" defendants.  Plaintiff Mary Ortiz ("Ortiz") and three other Plaintiffs ("Other California Plaintiffs") are California citizens.

After service was made upon McKesson, but before it was effectuated upon GSK, GSK removed the action to the United States District Court for the Central District of California, Eastern Division - Riverside, on January 11, 2008, claiming both diversity and federal question jurisdiction.  McKesson consented to removal.  The action was transferred from that court and filed in this MDL on February 21, 2008.

Plaintiffs move for remand for lack of subject matter jurisdiction.  They contend that because four Plaintiffs and McKesson are citizens of California, diversity is absent.  They also argue that the forum defendant rule prohibits removal on the basis of diversity jurisdiction.  Also, for the reasons reviewed in the Ayala-Castro case summary, above, Plaintiffs argue that federal question jurisdiction does not lie herein.

GSK counters that both federal question and diversity jurisdiction exist as to all Plaintiffs.  Its arguments with respect to federal question and diversity jurisdiction are the same as those reviewed in the Ayala-Castro summary, above.  In connection with its argument that McKesson is fraudulently joined, GSK notes that early discovery shows that Ortiz did not ingest Avandia distributed by McKesson.  No such evidence appears as to the Other California

13

Plaintiffs.  GSK further argues that because McKesson was fraudulently joined, its citizenship must be ignored in the Court's analysis of the forum defendant rule.  Finally, GSK contends that Plaintiffs are fraudulently misjoined, and that their claims should be severed and considered separately as a result.

**11. Khanna, 2:08-cv-02884**

Plaintiff Mohinder Khanna ("Khanna"), a citizen of California, originally filed this action in the Superior Court of California for the County of San Francisco, bringing identical state law claims against GSK, McKesson and certain unnamed "Doe" defendants.

Before service of process was made upon either Defendant, GSK removed the action to the United States District Court for the Northern District of California, San Francisco Division, on the basis of federal question and diversity jurisdiction.  GSK asserted McKesson's consent to removal was unnecessary because McKesson had not been served.  The case was transferred from that court and filed in this MDL on June 20, 2008.

Khanna moves for remand, arguing that the forum defendant rule renders removal on the basis of diversity of citizenship procedurally improper, that the parties are non-diverse, and that federal question jurisdiction does not lie over this action.  GSK counters that the forum defendant rule is inapposite because McKesson had not been "properly . . . served" at the time of removal, as required to implicate the additional requirements of 28 U.S.C. § 1441(b).  GSK also contends that McKesson's citizenship must be ignored for purposes of the forum defendant rule because it is fraudulently joined.  Alternatively, GSK asserts that Plaintiffs' state law claims raise substantial issues of federal law, giving rise to federal question jurisdiction, an argument reviewed in the Ayala-Castro case summary, above.

14

12. **Mitchell, et al.**, 2:08-cv-04235

This action was originally filed in the Superior Court of the State of California for the County of Sacramento by twelve Plaintiffs – five husband and wife pairs, and two surviving beneficiaries of deceased individuals – bringing identical state law claims against GSK, McKesson and 50 "Doe" defendants.  Plaintiffs F.C. and Mitsuko Mitchell are California citizens ("the Mitchells").

After both McKesson and GSK accepted service of process, GSK removed the case to the United States District Court for the Eastern District of California, Sacramento, on March 10, 2008, on the basis of federal question and diversity jurisdiction.  McKesson consented to removal.  The action was transferred from that Court and filed in this MDL on September 3, 2008.

 Plaintiffs move for remand for lack of subject matter jurisdiction.  They contend that because the Mitchells and McKesson are California citizens, the parties are non-diverse. They further contend that due to McKesson's California citizenship, the forum defendant rule prohibits removal premised on diversity jurisdiction.  Also, for the reasons reviewed in the Ayala-Castro case summary, above, Plaintiffs argue that  federal question jurisdiction does not lie in this matter.

GSK argues that federal question and diversity jurisdiction exist as to all Plaintiffs.  Its arguments with respect to federal question and diversity jurisdiction are the same as those reviewed in the Ayala-Castro summary, above.  GSK also argues that because McKesson was fraudulently joined, its citizenship must be ignored in the forum defendant rule analysis.  Finally, GSK argues Plaintiffs are fraudulently misjoined, such that the Court should

sever the claims of each Plaintiff for separate consideration.

### 13. **Thornton**, 2:08-cv-01730

Plaintiff Hector Thornton ("Thornton"), a citizen of Ohio, originally filed this action in the Superior Court of California for the County of San Francisco, bringing identical state law claims against GSK and McKesson.

After service of process was made upon both Defendants, GSK removed the case to the United States District Court for the Northern District of California, San Francisco Division, on the basis of federal question and diversity jurisdiction.  McKesson consented to removal.  The case was transferred from that court and filed in this MDL on April 11, 2008.

The arguments of the parties with respect to remand are in all material respects identical to those reviewed in the Hall case summary, above, and will not be restated here.

### 14. **Upshaw**, 2:08-cv-01731

Plaintiff Ivan Upshaw ("Upshaw"), a citizen of Kansas, originally filed this action in the Superior Court of California for the County of San Francisco, bringing identical state law claims against GSK and McKesson.

After service of process was made upon both Defendants, GSK removed the case to the United States District Court for the Northern District of California, San Francisco Division, on the basis of federal question and diversity jurisdiction.  McKesson consented to removal.  The case was transferred from that court and filed in this MDL on April 11, 2008.

The arguments of the parties with respect to remand are materially identical to those reviewed in the Hall case summary, above, and will not be restated here.

16

**15. Williams, et al., 2:08-cv-02943**

This action was originally filed in the Superior Court of the State of California for the County of Los Angeles by twenty-one unrelated plaintiffs bringing identical state law claims against GSK, McKesson and 100 "Doe" defendants. Plaintiffs Deborah Williams ("Williams") and Leo Pallanck ("Pallanck") are California citizens. The citizenship of three other Plaintiffs bears noting: Elizabeth Huerta is a citizen of Nevada ("Huerta"); Shirley Loeffler is a citizen of Minnesota ("Loeffler"); and Roy Wade Scott is a citizen of Tennessee ("Scott").

Before service was made upon either McKesson or GSK, GSK removed the action to the United States District Court for the Central District of California, Western Division - Los Angeles, on April 18, 2008, claiming both diversity and federal question jurisdiction. McKesson consented to removal. The action was transferred from that court and filed in this MDL on June 24, 2008.

Plaintiffs move for remand for lack of subject matter jurisdiction. They contend that because Williams, Pallanck and McKesson are citizens of California, diversity is absent. They also argue that in light of McKesson's California citizenship, the forum defendant rule prohibits removal premised upon diversity jurisdiction. Also, for the reasons reviewed in the Ayala-Castro case summary, above, Plaintiffs argue that federal question jurisdiction does not exist over this action.

GSK counters that both federal question and diversity jurisdiction exist as to all Plaintiffs. Its arguments with respect to federal question and diversity jurisdiction are the same as those reviewed in the Ayala-Castro summary, above. In arguing that McKesson's joinder is fraudulent, GSK notes early discovery showing that Huerta, Loeffler and Scott did not ingest

Avandia distributed by McKesson.  No such evidence appears as to any other Plaintiff.  GSK further argues that because McKesson was fraudulently joined, its citizenship must be ignored in the Court's analysis of the forum defendant rule.  Finally, GSK contends that Plaintiffs are fraudulently misjoined, and that as a result their claims should be severed and considered separately.

*B.  The North Carolina Case*

**16.  Massey, et al., 2:08-cv-04981**

On May 27, 2008, Plaintiffs, both citizens of North Carolina, filed this action in the General Court of Justice for the State of North Carolina, Superior Court Division, Durham County, bringing state law claims against GSK.  GSK removed the action to the United States District Court for the Middle District of North Carolina on the basis of both federal question and diversity jurisdiction.  The case was subsequently transferred and filed in this MDL on October 20, 2008.

Plaintiffs move for remand for lack of subject matter jurisdiction, arguing that their claims do not give rise to federal question jurisdiction, and, notably, that the parties are non-diverse.  In support of the latter argument, Plaintiffs assert that GSK maintains its principal place of business in North Carolina, and thus may be considered a citizen of North Carolina for purposes of the diversity jurisdiction analysis.  GSK counters that it is a citizen of Pennsylvania, and sets forth evidence to that effect.  GSK also argues that there is federal question jurisdiction over this case for the same reasons asserted in the cases already reviewed.

18

*C.  The New York Case*

**17.  <u>Mick</u>, 2:08-cv-05019**

Plaintiff Renee Mick ("Mick"), a citizen of New York, originally filed this action in the New York Supreme Court, Niagara County, bringing state law claims against GSK as well as Rite Aid Pharmacy and Rite Aid of New York, Inc. ("Rite Aid").  Rite Aid is a New York corporation in the business of owning and operating retail drug stores with its principal place of business in New York.  After service, GSK removed the action with Rite Aid's consent to the United States District Court for the Western District of New York, on the basis of diversity of citizenship alone.  The action was transferred and subsequently filed in this MDL on October 21, 2008.

Mick moves for remand for lack of subject matter jurisdiction.  She argues that because both she and Rite Aid are New York citizens, the parties are non-diverse.  GSK argues the citizenship of Rite Aid should be disregarded for purposes of the diversity of citizenship analysis because Rite Aid was fraudulently joined.  In support, GSK contends there is no basis under New York law for Mick's claims against Rite Aid.

## II.  DISCUSSION

*A.  Applicable Law*

**1.  <u>General Principles</u>**

Disposition of the instant motions is governed by the federal remand statute,[11]

---

[11] 28 U.S.C. §§ 1441 - 1453.  As an MDL court, the Court applies interpretations of federal law of the Court of Appeals for the Third Circuit, in which it sits.  <u>See</u> <u>Menowitz v. Brown</u>, 991 F.2d 36, 40 (2d Cir. 1993); <u>In re Korean Air Lines Disaster</u>, 829 F.2d 1171, 1174 (D.C. Cir. 1987); <u>In re Diet Drugs Litigation</u>, 294 F. Supp. 2d 667, 672 (E.D. Pa. 2003).

which, in pertinent part, refers to the requirements for subject matter jurisdiction set forth in 28

U.S.C. §§ 1331 and 1332.  Pursuant to 28 U.S.C. § 1441(a), a defendant may remove an action

brought in state court if it could have been brought in federal court in the first instance.  A federal

district court has such original jurisdiction to hear a civil action in either of two circumstances.

The first is if the action "aris[es] under the Constitution, laws or treaties of the United States"

("federal question jurisdiction").[12]  The second is if the action involves an amount in controversy

in excess of $75,000 and is between citizens of different states ("diversity jurisdiction").[13]

       The United States Supreme Court has established that "[a] case 'aris[es] under'

federal law within the meaning of § 1331 . . . if a well-pleaded complaint establishes either that

federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on

resolution of a substantial question of federal law."[14]  Under § 1441(b) of the federal remand

statute, an action may be removed on the basis of federal question jurisdiction without regard to

the citizenship of the parties to it.[15]

       For diversity jurisdiction to exist, complete diversity of citizenship between

plaintiffs and defendants is required.  With respect to removal, in contrast to the treatment of

cases "arising under" federal law, § 1441(b) prohibits removal of an action premised on diversity

jurisdiction if any "of the parties in interest properly joined and *served* as defendants is a citizen

---

[12] 28 U.S.C. § 1331.

[13] 28 U.S.C. § 1332(a)(1).  It is undisputed that all actions presently at issue involve amounts in controversy in excess of $75,000.

[14] Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 690 (2006) (quotations omitted).

[15] Other procedural requirements for removal set forth in the removal statute, see, e.g., 28 U.S.C. § 1446, are not at issue in the present motions and are not reviewed herein.

of the State in which such action is brought."[16]  This restriction is known as the "forum defendant

rule."  It should be noted that regardless of service, the presence of a properly joined, non-diverse

defendant destroys complete diversity, and thus, diversity jurisdiction.[17]

Pursuant to 28 U.S.C. § 1447(c), if, upon motion or *sua sponte*, a district court

finds that it lacks subject matter jurisdiction over a removed action, it must remand the action to

state court.[18]  Remand may otherwise be appropriate due to "a defect in the removal process,"[19]

such as non-compliance with the requirements of 28 U.S.C. §§ 1441 or 1446.  In general, a court

must construe the removal statute narrowly, resolving "all doubts . . . in favor of remand."[20]

## 2. Forum Defendant Rule

Courts have long analyzed the forum defendant rule in light of the main purpose

of diversity jurisdiction – "to avoid prejudice to out-of-state defendants"[21] – as well as the

understanding that Congress intended § 1441(b) to restrict federal jurisdiction.[22]  Thus, the rule

prohibits removal on diversity grounds of an action involving a properly joined and served in-

state defendant whose presence in the action presumably reduces or eliminates the risk of

---

[16] 28 U.S.C. § 1441(b) (emphasis added).

[17] See Castner v. Exxon Company, U.S.A., 563 F. Supp. 684, 687-88 (E.D. Pa. 1983).  See also Allen v. GlaxoSmithKline PLC, Civ. No. 07-5045, 2008 WL 2247067, at *6 (E.D. Pa. May 30, 2008) (citing Pullman Co. v. Jenkins, 305 U.S. 534, 540-41 (1939) (holding that non-diverse defendant defeats removal jurisdiction regardless of service) and Pecherski v. General Motors Corp., 636 F.2d 1156, 1159 (8th Cir. 1981) (Pullman holding relating to diversity requirement regardless of service remains viable law)).

[18] 28 U.S.C. § 1447(c).

[19] PAS v. Travelers Ins. Co., 7 F.3d 329, 352 (3d Cir. 1999).

[20] Steel Valley Auth. v. Union Switch and Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987).

[21] Allen, 2008 WL 2247067, at*4 (citing McSparran v. Weist, 402 F.2d 867, 876 (3d Cir. 1968)).

[22] See, e.g., Oxendine v. Merck & Co., Inc., 236 F. Supp. 2d 517, 524-25 (D. Md. 2002).

prejudice against the defense;[23] Congress has deemed that defendants in such actions do not require access to the federal courts. At the same time, the rule's "joined and served" requirement ensures that a plaintiff cannot thwart a foreign defendant's ability to remove the action simply by naming a forum defendant which the plaintiff has no intention of actually serving and pursuing in litigation.[24] Notably, the rule is silent as to arguably equivalent defense tactics, in particular, the phenomenon – enabled by modern litigation technology – of the forum defendant removing an action before being served with process due to its ability to electronically monitor state court filings. A literal reading of the "properly joined and served" language of § 1441(b) would suggest that the statute allows even a forum defendant into federal court provided it can win such a "race to remove."

Judicial application of the forum defendant rule has not been uniform. Many courts, interpreting § 1441(b) literally, have permitted removal by a not-yet-served forum defendant.[25] Many other courts, emphasizing the limited nature of federal jurisdiction, the purposes of diversity jurisdiction and the restrictive nature of the removal statute, have held that the "properly joined and served" requirement of § 1441(b) does not tacitly permit removal by an un-served forum defendant, and have remanded actions thus removed.[26]

---

[23] See Dresser Indus., Inc. v. Underwriters at Lloyd's of London, 106 F.3d 494, 499 (3d Cir. 1997).

[24] See Allen, 2008 WL 2247067, at *4 (citing Stan Winston Creatures, Inc. v. Toys "R" Us, Inc., 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003)).

[25] See, e.g., Valerio v. SmithKline Beecham Corp., No. 08-60522, 2008 WL 3286976, at *2 (S.D. Fla. Aug. 7, 2008)(finding removal by a forum defendant prior to service proper under plain language of 28 U.S.C. § 1441(b)); Thomson v. Novartis, No. 06-6280, 2007 WL 1521138 (D. N.J. May 22, 2007) (same); Ott v. Consol. Freightways Corp., 213 F. Supp. 2d 662, 665 & n. 3 (S.D. Miss. 2002) (collecting cases).

[26] See, e.g., Sullivan v. Novartis Pharmaceuticals Corp., --- F. Supp. 2d ----, Civ. No. 08-1091, 2008 WL 4148730, at *1 -*7 (D. N.J. Sept. 10, 2008) (comprehensively analyzing language, purposes and legislative history of 28 U.S.C. § 1441(b), "look[ing] beyond the language of the statute to avoid an absurd and bizarre result," and

This Court, agreeing with the latter line of cases, rejects any construction of § 1441(b) that would allow an in-state defendant to side-step the restrictive purpose of the forum defendant rule by "racing to remove" before being served with process.  The core aim of diversity jurisdiction, to permit out-of-state defendants an avenue of relief from prejudice in a foreign state court, plainly is not implicated by a forum defendant's ability to remove an action filed in its home state.  The Court agrees with the comprehensive analysis of the question by Senior District Judge Debevoise of the District of New Jersey in Sullivan v. Novartis, in which he concludes in part, after exhaustive research into the relevant case law, language and history of § 1441(b), that any "contention that removability should depend on the timing of service is absurd on its face, and could not have been intended by Congress."[27]

This reasoning has some bearing on the related issue of whether the forum defendant rule permits removal by an out-of-state defendant before *any* defendant has been served, in a case in which a forum defendant has been named.  Again, and along similar lines to those just seen, district courts have split on the question.[28]  Some courts, applying a strict, literal reading of § 1441(b), and noting its silence as to whether service on any defendant is a prerequisite to its operation, have held that a complete lack of service is no bar to removal.[29]

---

remanding action removed by un-served forum defendant); Allen, 2008 WL 2247067, at *6; Fields v. Organon USA Inc., Civ. No. 07-2922, 2007 WL 4365312, at *5 (D. N.J. Dec. 12, 2007); Vivas v. Boening Co., 486 F. Supp. 2d 726 (N.D. Ill. 2007); Castner, 563 F. Supp. at 687-88.

[27] --- F. Supp. 2d ----, 2008 WL 4148730, at *5 (citing Oxendine, 236 F. Supp. 2d at 526).

[28] Compare City of Ann Arbor Employees' Retirement Sys. v. Gecht, No. C-06-7453, 2007 WL 760568, at *6 (N.D. Cal. March 9, 2007) (through literal reading of § 1441(b), finding no statutory bar to removal of action in which no defendant has been served) and Holmstrom v. Harad, No. 05-C-2714, 2005 WL 1950672, at *2 (N.D. Ill. Aug. 11, 2005) (holding that removal by unserved out-of-state defendant not permitted where no defendant has been served).

[29] E.g., Gecht, 2007 WL 760568, at *6.

Others have ruled that when no defendant has been served, but a forum defendant has been named, the citizenship of the forum defendant may not be ignored for purposes of § 1441(b).[30] Discussing the rationale for the latter approach, district courts have noted that "when no defendant has been served . . . the non-forum defendant stands on equal footing as the forum defendant . . . [n]either defendant in that scenario is obligated to appear in court[, n]or has the thirty day period for removal started to run."[31]   Courts also note the real concern of encouraging an unfair "race to remove" by technologically sophisticated non-forum defendants through a rule that permits removal prior to any service.[32]   The reasoning of the latter rulings is persuasive to the Court, and will be followed herein.

The application of the forum defendant rule is different when, in an action involving multiple defendants, an out-of-state defendant removes after it has been served, but prior to service upon any forum defendant.  In that situation, the rationale behind the "joined and served" requirement of § 1441(b) and, to some extent, the protective purpose of diversity jurisdiction, are implicated, and removal by the foreign defendant is proper.[33]

In general, a district court should remand an action it finds to have been removed

---

[30] E.g., <u>Recognition Communications, Inc. v. American Automobile Association</u>, No. 97-CV-0945-P, 1998 WL 119528, at *3 (N.D. Tex. March 5, 1998); <u>Holmstrom</u>, 2005 WL 1950672, at *2.

[31] <u>Holmstrom</u>, 2005 WL 1950672, at *2 ("the protection afforded by the 'joined and served' requirement is wholly unnecessary for an unserved non-forum defendant" ) (citations omitted); <u>see also</u> <u>Fields</u>, 2007 WL 4365312, at *5 ("[s]tated another way, an out-of-state defendant should not fear local bias before it is served, and therefore, has no basis for removal before it is served").

[32] E.g. <u>Fields</u>, 2007 WL 4365312, n.2 ("[i]n some state court systems, evidently, the race by defendants to remove before being served by the plaintiff is easily won by defendants because plaintiffs cannot serve defendant before receiving a state track assignment number.  This assignment can take over a week from the time the plaintiff files suit, during which time the defendant can learn of the action and remove it to federal court.").

[33] <u>See</u> <u>Vanderwerf v. GlaxoSmithKline, PLC</u>, Civ. No. 05-1315, 2005 WL 6151369 (E.D. Pa. May 5, 2005).

in violation of the forum defendant rule.[34]  The district court may stay its hand in such

circumstances, however, to consider arguments that the forum defendant at issue was

fraudulently joined.[35]

## 2.  **Fraudulent Joinder**

"The doctrine of fraudulent joinder prevents a plaintiff from joining a non-diverse

defendant 'with no real connection to the controversy' to defeat federal removal jurisdiction."[36]

Because the "right of removal cannot be defeated by a fraudulent joinder of a resident

defendant," a district court may disregard the citizenship of any fraudulently joined defendant

when assessing the propriety of removal premised on diversity jurisdiction.[37]

A district court may base a finding of fraudulent joinder on factual or legal

grounds.  Under the test established by the Court of Appeals for the Third Circuit, such a finding

is appropriate "where there is no reasonable basis in fact or colorable ground supporting the

claim against the joined defendant, or no real intention in good faith to prosecute the action

against the defendant or seek a joint judgment."[38]  To assess the quality of a claim in these

regards, a district court must look to the requirements of state law.  A claim is colorable if it is

not "wholly insubstantial and frivolous" in light of the relevant law.[39]  With respect to a claim's

---

[34] See  PAS, 7 F.3d at 352.

[35] Castner, 563 F. Supp. at 687-88.

[36] In re Fosamax Prods. Liability Litig., MDL No. 1789, 2008 WL 2940560, at *3 (S.D.N.Y. July 29, 2008) (quoting Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 4601-61 (2d Cir. 1998)).

[37] Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921); In re Diet Drugs Litig., 294 F. Supp. 2d at 672.

[38] Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 32 (3d Cir. 1985) (quotation omitted).

[39] Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992).

factual basis, a "limited piercing of the allegations to discover fraudulent joinder" may be appropriate.[40]  The "limit[ation]" is significant, however, with the permissible inquiry being less probing than the factual review a district court conducts in deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[41]

The burden of demonstrating that a defendant was fraudulently joined rests with the defendant making the charge.[42]  The burden is a heavy one.[43]  When evaluating a charge of fraudulent joinder, "[a] district court must resolve all contested issues of substantive fact . . . and . . . any uncertainties as to the current state of controlling substantive law in favor of the plaintiff."[44]  Moreover, "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court."[45]

Likewise, in accordance with rulings of MDL courts in this Circuit[46] and others,[47] when evaluating removal the Court will sever any "procedurally misjoined" plaintiff where the

---

[40] Boyer v. Snap-On Tools Corp., 913 F.2d 108, 112 (3d Cir. 1990).

[41] Batoff, 977 F.2d at 852.

[42] Boyer, 913 F.2d at 111.

[43] Id.

[44] Id.

[45] Id. (quoting Coker v. Amoco Oil Co., 709 F.2d 1433, 1440-41 (11th Cir. 1983)).

[46] E.g., In re Diet Drugs Litig., 294 F. Supp. 2d at 673.  The seminal case relating to "procedural misjoinder" of plaintiffs is the Eleventh Circuit case Tapscott v. M.S. Dealer Service Corp., 77 F.3d 1353, 1360 (11th Cir. 1996) (overruled on other grounds).  The Court of Appeals for the Third Circuit has not stated its view on whether and how district courts should recognize and treat the claimed egregious "misjoinder" of plaintiffs to defeat diversity in the removal context.

[47] E.g., In re Fosamax Prods. Liability Litig., 2008 WL 2940560, at *4.

misjoinder in question is "so egregious as to constitute fraudulent misjoinder."[48]  Like the fraudulent joinder of a defendant with no real connection to an action, the egregious misjoinder of a plaintiff in order to prevent removal based on diversity jurisdiction has no proper justification and should not be permitted.[49]  The Court agrees with several courts which have ruled that the egregiousness evaluation is analogous to that which a court uses to assess the purported fraudulent joinder of a defendant.[50]  The inquiry thus looks to whether, based on the pleadings, there is an outright absence of reasonable basis in fact or colorable ground supporting the joinder.  The legal point of reference for the evaluation is the applicable state's joinder law.[51]

    *B.  Whether Federal Question Jurisdiction Supports The Contested Removals*

**1.  <u>Arguments of the Parties</u>**

Defendant GSK expressly asserts that federal question jurisdiction exists over sixteen of the seventeen cases presently at issue.[52]  Relying on the decision of the United States Supreme Court in <u>Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.</u>, GSK contends that state law claims stated by Plaintiffs in the relevant cases give rise to federal question jurisdiction because they "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved

---

[48] <u>Tapscott</u>, 77 F.3d at 1360.

[49] <u>See</u> <u>In re Diet Drugs Litig.</u>, 294 F. Supp. 2d at 673-74.

[50] <u>See</u> <u>In re Fosamax Prods. Liability Litig.</u>, 2008 WL 2940560, at *4.  <u>See also</u> <u>Fed. Ins. Co. v. Tyco Int'l Ltd.</u>, 422 F. Supp. 2d 357, 378 (S.D.N.Y. 2006); <u>Conk v. Richards & O'Neil, LLP</u>, 77 F. Supp. 2d 956, 971 (S.D. Ind. 1999).

[51] <u>See</u> <u>In re Diet Drugs Litig.</u>, 294 F. Supp. 2d at 673.

[52] GSK did not assert federal question jurisdiction in support of the removal of the <u>Mick</u> case out of New York state.

balance of federal and state judicial responsibilities."[53]   GSK does not identify precisely which claims it believes meet this standard from among the dozens stated by Plaintiffs in the instant cases.  Instead it takes a more categorical approach in arguing that Plaintiffs' claims satisfy Grable in two different ways.  First, GSK argues that as a general matter Plaintiffs' claims against GSK and McKesson raise the type of "substantial issue" contemplated in Grable insofar as they rely, explicitly or otherwise,[54] on alleged violations of the federal Food, Drug and Cosmetic Act (FDCA) and its implementing regulations.  Second, GSK contends that counts actually or potentially involving failure to warn claims against McKesson raise the substantial federal issue "whether a plaintiff can recover against McKesson for negligent failure to warn where federal law clearly prohibits the distributor from altering the manufacturer's label."[55] Further, GSK asserts that to open the federal courthouse to such claims would not disturb the proper balance of judicial responsibility between the federal and state judiciaries as determined by Congress.

Plaintiffs respond that the Complaints in question do not raise substantial federal issues of the sort necessary to support federal question jurisdiction, and as such, they do not satisfy Grable.  According to Plaintiffs, in Merrell Dow Pharmaceuticals, Inc. v. Thompson, the U.S. Supreme Court has effectively decided the question, ruling that state tort claims alleging,

---

[53] 545 U.S. 308, 314 (2005).

[54] GSK accurately notes that, while many Plaintiffs' pleadings expressly refer to violations of the FDCA in support of allegations of a negligent failure to warn by Defendants, others do not.  Def.'s Mem. Fed. Question Jur. at *2-*3.  Nonetheless, GSK argues that because the FDCA must figure centrally into any proper assessment of the Avandia warnings, it "is irrelevant" whether the Act is actually mentioned in a failure to warn claim.  See id.  The Court will thus consider this argument as to all relevant Plaintiffs.

[55] Def.'s Mem. Fed. Question Jur. at *3.

inter alia, violations of the FDCA by a drug manufacturer do not inherently involve substantial issues of federal law.[56]  Plaintiffs contend that if reliance on the FDCA in state law claims against drug manufacturers does not give rise to federal question jurisdiction, then by the same token neither should such reliance in state claims brought against drug distributors.

### 2. *Merrell Dow, Grable* and Application to the Relevant Cases

In determining whether a case "arises under" federal law and thus supports federal question jurisdiction, a federal court refers to the plaintiff's well-pleaded complaint.[57]  The requisite federal issue "must be disclosed upon the face of the complaint."[58]  Federal question jurisdiction may not be based on a federal issue raised in a defense.[59]

While a complaint bringing a federal cause of action will always support federal question jurisdiction, such jurisdiction may alternatively lie from state law claims "which implicate significant federal issues."[60]  There is no "single, precise, all-embracing test" that courts may use to identify when "federal issues embedded in state-law claims" are sufficiently substantial or important to give rise to federal question jurisdiction.[61]  However, the Supreme Court has made clear that the category of cases involving state law claims of such jurisdictional import is "special," "small" and "slim."[62]  Identifying those state law claims that fall into this

---

[56] Pls.' Mem. Fed. Question Jur. at *4 (citing Merrell Dow, 478 U.S. 804 (1986)).

[57] U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 389 (3d Cir. 2002).

[58] Id. (quoting Gully v. First Nat'l Bank in Meridian, 299 U.S. 109, 113 (1936)).

[59] Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).

[60] Grable, 545 U.S. at 314.

[61] Id.

[62] Empire Healthchoice Assur. Inc. v. McVeigh, 547 U.S. 677, 700-01 (2006).

category is "recognized [as] '[t]he most difficult single problem in determining whether federal question jurisdiction exists.'"[63]

As noted above, the parties contest the applicability to the instant actions of two cases that illuminate this difficult area of law, <u>Merrell Dow</u> and <u>Grable</u>.  Forwarded by GSK, <u>Grable</u> exemplifies that "slim" category of cases in which federal question jurisdiction springs from a state law claim that implicates substantial federal issues.[64]  <u>Grable</u> involved a quiet title action removed to federal court in which "the only . . . issue contested in the case" appeared to be whether the Internal Revenue Service had served notice on Grable of a land seizure in a manner conforming to the requirements of the Internal Revenue Code, 28 U.S.C. § 6335(a).[65]  The Supreme Court held that federal question jurisdiction existed despite the fact that the complaint included only a state law property cause of action.  It existed because the state law claim turned on an interpretation of the federal tax code, the meaning of which "is an important issue of federal law that sensibly belongs in a federal court;" because the federal government had a "direct interest" in having the administrative action undertaken by the IRS evaluated in a federal forum; and because title claims implicating substantial issues of federal law are rare, such that the ruling risked minimal disturbance to the "congressionally approved balance of federal and state judicial responsibilities."[66]  GSK asserts that <u>Grable</u> models the sort of "contextual enquiry" the Court should undertake here to ascertain whether federal jurisdiction derives from Plaintiffs'

---

[63] <u>Pennsylvania v. Eli Lilly & Co., Inc.</u>, 511 F. Supp. 2d 576, 578-79 (E.D. Pa. 2007) (quoting 13B Wright, et al., FEDERAL PRACTICE AND PROCEDURE 17-18 (2d ed. 1984)).

[64] <u>Empire</u>, 547 U.S. at 701.

[65] <u>Grable</u>, 545 U.S. at 310-15.

[66] <u>Id.</u> at 309, 314-15.

purely state law claims.

      Plaintiffs counter that <u>Merrell Dow</u> controls.  <u>Merrell Dow</u> involved allegations of injury from a drug made by the defendant.  The plaintiff's complaint stated several state law claims, including one alleging violation of FDCA labeling requirements.[67]  Defendant claimed plaintiff's reliance on FDCA standards rendered the case one "arising under" federal law, and removed the action on that basis.[68]  The Court affirmed a lower court ruling that the action must be remanded for lack of federal question jurisdiction.  The Court's analysis of the substantiality of the federal issue implicated by plaintiff's state law claims involved "sensitive judgments about congressional intent, judicial power, and the federal system," made with "'an eye to practicality and necessity.'"[69] The Court made clear that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction,"[70] and also gave significant weight to the "necessary assumption" that Congress "did not intend a private federal remedy for violations of [the FDCA]."[71]  In its holding, the Court "conclude[d] that the congressional determination that there should be no federal remedy for the violation of [the FDCA] is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction."[72]

---

[67] <u>Merrell Dow</u>, 478 U.S. at 805.

[68] <u>Id.</u> at 806.

[69] <u>Id.</u> at 811 (quoting <u>Franchise Tax Board v. Construction Laborers Vacation Trust</u>, 463 U.S. 1, 20 (1983)).

[70] <u>Id.</u> at 813.

[71] <u>Id.</u> at 811-12, 814.

[72] <u>Id.</u> at 814.

As a fellow judge of this District has aptly noted, "Grable does not disturb Merrell Dow," but clarifies that the earlier case should not be understood as establishing a bright line rule that federal issues embedded in state law claims may only be considered "substantial" where a private federal cause of action is available.[73]  It bears noting, however, that the Court in Grable took care to explain how "Merrell Dow's analysis . . . fits within the framework of examining the importance of having a federal forum for the issue, and the consistency of such a forum with Congress's intended division of labor between state and federal courts."[74]  Indeed, the Grable Court approved the earlier decision's reasoning that "a potentially enormous shift" of state tort cases into federal courts would result if federal jurisdiction were to spring from tort claims' reliance on "mislabeling" under the FDCA "and other statutory violations."[75]

Understandably, GSK seeks to minimize the relevance of Merrell Dow after Grable, and to persuade the Court that Grable permits – at least – a fresh look at what is in a preponderance of material respects the same question as to GSK as the one answered by the Supreme Court in Merrell Dow.  That case instructs that an assertion of a violation of the FDCA as an element of a state tort claim is not a sufficiently substantial federal issue to confer federal question jurisdiction.  That ruling governs the present question of whether such jurisdiction springs from assertions of FDCA violations by GSK embedded in Plaintiffs' state tort claims: it does not.

Merrell Dow sheds perhaps less light on the jurisdictional import of Plaintiffs'

---

[73] Allen, 2008 WL 2247067, at * 8 (quoting Grable, 545 U.S. at 316 ("Merrell Dow . . . is not to the contrary.")).

[74] Grable, 545 U.S. at 319.

[75] Id.

claims of negligence through failure to warn against McKesson that, as GSK notes, implicate the scope of the FDCA. There is some basic appeal to Plaintiffs' argument that, as state law claims alleging violations of the FDCA are too insubstantial to give rise to federal question jurisdiction, so, too, are claims raising questions as to that statute's applicability or coverage. However, the Court will not base a ruling purely on this ground, but instead will apply to the question the more "sensitive judgments" regarding federalism and congressional intent that the Supreme Court has described. Through this analysis, the Court finds that the present federal issue is not so substantial as to confer federal question jurisdiction over the instant cases. As in Merrell Dow, and unlike the circumstance presented in Grable, the issue of McKesson's status under the FDCA is not essential, but subsidiary, to the state tort claims that potentially raise it.[76] Further, California, New York or North Carolina courts are entirely capable of interpreting the FDCA and implementing regulations to determine whether, as GSK contends, a distributor such as McKesson is "clearly prohibited" from altering a drug's label or otherwise conveying warnings about a drug.[77] Any abiding federalism concerns may be allayed by the fact that any such

---

[76] As GSK has elected not to specify precisely which of Plaintiffs' claims implicate the present issue, and the Court would not presume to limit or define the arguments of GSK's able counsel, the Court does not catalog every claim by every Plaintiff that may raise the issue, but simply notes that typical of the claims against McKesson are those found in the Hefner Complaint, which are: (1) negligence; (2) negligent failure to adequately warn; (3) negligence per se; (4) negligent misrepresentation; (5) breach of express warranty; (6) breach of implied warranty; (7) strict products liability – defective design; (8) strict products liability – manufacturing and design defect; (9) strict product liability – failure to adequately warn; (10) fraudulent misrepresentation; (11) violations of the [state] Unfair Trade Practices and Consumer Protection Law; (12) unjust enrichment; (13) wrongful death; (14) survival action; (15) loss of consortium; and (16) punitive damages.

[77] Cf. Merrell Dow, 478 U.S. 814 n.12 (citing Kravitz v. Homeowners Warranty Corp., 542 F. Supp. 317, 320 (E.D. Pa. 1982) ("I cannot identify any compelling reasons of federal judicial policy for embracing a case of this kind as a federal question case. The essential Pennsylvania elements of plaintiffs' suit for rescission would be more appropriately dealt with by a Court of Common Pleas than by this court; and, with respect to the lesser-included issue of federal law, Pennsylvania's courts are fully competent to interpret the Magnuson-Moss Warranty Act and the relevant F.T.C. regulations, subject to review by the United States Supreme Court.")).

determination would be subject to review by the United States Supreme Court.  The Court also finds that a significant disruption of the congressionally determined balance between the federal and state judiciaries would be risked if federal jurisdiction could be based upon a question, embedded in a state tort claim, as to the scope or applicability of a related federal statute.[78]  For all these reasons, the Court rules that federal question jurisdiction does not lie over the instant cases.

*C.  Whether Diversity Jurisdiction Supports The Contested Removals*

Because of the foregoing ruling, in any case where diversity jurisdiction is lacking or removal was procedurally improper pursuant to the legal framework set forth in Section II.A <u>supra</u>, remand will be appropriate.  The Court thus proceeds to consider the application of this law to the instant cases.  The cases are grouped according to state and reviewed again insofar as is necessary below.

**1.  <u>The California Cases</u>**

The Court reviews the California cases beginning with <u>Bone</u>, and then proceeding alphabetically through the remaining cases from that state.

**a.  <u>Bone, et al.</u>, 2:08-cv-01726**

<u>Bone</u> was filed in California state court by eleven Plaintiffs, including one from California and one from Pennsylvania.  Plaintiffs' claims against McKesson, including for negligence in the marketing and distribution of Avandia and strict product liability - failure to warn, are based in part on the factual allegations set forth in paragraph 29 of the Complaint,

---

[78] <u>Cf.</u> <u>Grable</u>, 545 U.S. at 319 ("[a] general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would . . . have heralded a potentially enormous shift of traditionally state cases into federal courts.").

which states:

> At all times relevant to this action, Defendant McKesson packaged, distributed, supplied, sold, placed into the stream of commerce, labeled, described, marketed, advertised, promoted, and purported to warn or to inform users regarding the risks pertaining to, and assuaged concerns about the pharmaceutical Avandia.[79]

GSK removed after both it and McKesson were "properly joined and served," such that remand is required under the forum defendant rule[80] unless McKesson was fraudulently joined.[81]

As noted, under the applicable Third Circuit standard, the Court may find that McKesson was fraudulently joined upon a determination that "there is no reasonable basis in fact or colorable ground supporting" Plaintiffs' claims against it.[82]  Plaintiffs' failure to adequately plead a viable cause of action against McKesson must be "obvious according to the settled rules of the state."[83]  GSK argues that McKesson is fraudulently joined on both factual and legal bases.  The Court measures the adequacy of Plaintiffs' factual allegations and legal claims against the legal standards of California, the state where this action was originally filed.

Factually, California requires a civil complaint to contain "[a] statement of the

---

[79] Identical language and claims appear in the Complaints in the following California cases considered in this Memorandum: Thornton, Bowles, Fisher, Hall, Hefner, Jefferson, Upshaw.  The Complaints in Ayala-Castro, Boone, Johnson, Mitchell, Cross, and Williams include more specific pleadings, alleging, for example, that McKesson supplied their Avandia.

[80] See 28 U.S.C. § 1441(b).

[81] See Castner, 563 F. Supp. at 687-88.

[82] Abels, 770 F.2d at 32.

[83] Boyer, 913 F.2d at 111-12.

facts constituting the cause of action, in ordinary and concise language."[84]  "This requires 'only general allegations of ultimate fact. . . .  A pleading is adequate so long as it apprises the defendant of the factual basis for the plaintiff's claim.'"[85]  In pleading tort claims premising liability on, inter alia, a theory of strict product liability for failure to warn, and alleging that McKesson purported to warn consumers of Avandia's risks in the course of marketing and distributing the drug, Plaintiffs' allegations as to McKesson, noted in part above, appear to meet California's permissive standard.[86]

However, GSK urges the Court to pierce the pleadings and more searchingly assess the quality of the facts alleged.  In support, GSK points out that McKesson is one of several distributors of Avandia, yet no other distributor was named as a defendant, and also that early discovery disclosures show that Plaintiffs Townsend, Bone, and Gatta did not receive their Avandia from sources to which McKesson distributes the drug.  Any piercing of the allegations by the Court must not be a "summary judgment type inquiry," requiring the parties to marshal evidence supportive of the elements of their claims or defenses.[87]  Rather it must be more "limited," evaluating questions such as whether the facts pleaded are impossible or fatally inconsistent, as where a plaintiff suing a railroad for damages from injuries from an accident "had uncontestedly discontinued his employment with the railroad 15 months before the accident

---

[84] Cal. Code. Civ. Pro. § 425.10(a)(1).

[85] In re Fosamax, 2008 WL 2940560, at *5 (quoting McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1469-70 (Cal. Ct. App. 2006)).

[86]  If GSK persists in believing that Plaintiffs' pleadings as to McKesson fail to satisfy the relevant standards, it is encouraged to press such arguments to a California court in an appropriate case, thus testing the theory it now forwards to the Court and perhaps yielding case law that would illuminate the point in dispute.

[87] Boyer, 913 F.2d at 112.

in question."[88]

Turning to GSK's contentions, the Court cannot find that McKesson's fraudulent joinder is shown by the fact that McKesson is the only one of Avandia's several distributors named as a defendant herein. That McKesson alone was named could have many possible explanations, some legitimate, such that this argument of GSK must fail under the applicable standard. Next, the Court declines to engage in the sort of "summary judgment type inquiry" GSK urges as to the sources of Plaintiffs' drugs and what this information might show. Any such inquiry would only be worthwhile after both sides were afforded sufficient discovery to support accurate findings as to Plaintiffs' drug sources. This degree of factual testing is surely more than would be permitted in a Rule 12(b)(6) analysis – indeed, when facts of this sort, brought in proof of the pleadings, are considered by a court in the Rule 12(b)(6) context, "the motion must be treated as one for summary judgment under Rule 56."[89] The Court thus rejects GSK's factual approach to demonstrating the fraudulent joinder of McKesson.

GSK also argues there is no colorable ground under California law for Plaintiffs' claims against McKesson. GSK acknowledges that the California Supreme Court has not addressed the possibility of distributor liability in a pharmaceutical strict product liability action grounded on a claim of failure to warn, but asserts that "this Court can predict with confidence that California would reject" such a theory.[90]

The Court begins with a brief review of the relevant California law. California

---

[88] Id. (citing Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d 879 (10th Cir. 1967)).

[89] Fed. R. Civ. P. 12(d).

[90] Def.'s Corrected Omnibus Mem. Opp'n at *9 [Doc. No. 183].

has long adhered to a doctrine of strict product liability that holds a manufacturer "'strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.'"[91] Three types of strict product liability are recognized in the state, based on, respectively, "manufacturing defects, design defects, and 'warning defects,' i.e., inadequate warnings or failures to warn."[92]  The Supreme Court of California has ruled that a drug manufacturer may be sued in strict liability under the third theory – failure to warn – if it does not disclose the known or reasonably knowable dangers associated with a drug it makes.[93]  No California court has decided whether the same theory of liability may be applied to distributors of pharmaceuticals, nor does any California statute determine the question.[94]

Notably, the California Supreme Court has rejected the proposition that permitting strict product liability claims for inadequate warnings is inconsistent with related federal regulatory policy as promulgated by the FDA, stating that "FDA regulations do not expressly preempt common law tort remedies for failure to warn or occupy the entire field of regulation."[95] That court has also held that the duty to warn about risks associated with prescription drugs runs

---

[91] Anderson v. Owens-Corning Fiberglas Corp., 53 Cal. 3d 987, 994-95 (Cal. 1993) (quoting Greenman v. Yuba Power Products, Inc., 59 Cal. 2d 57 (Cal. 1963)).

[92] Id. at 995.

[93] Carlin v. Superior Court, 13 Cal. 4th 1104, 1117 (Cal. 1996).

[94] See Maher v. Novartis Pharm. Corp., No. 07-cv-852, 2007 WL 2330713, at *3 (S.D. Cal. Aug. 13, 2007).

[95] Carlin, 13 Cal 4th at 1114.

to the physician,[96] and generally does not apply to retail pharmacies.[97]  It has not identified any similar exception as to distributors.[98]  And as a federal district court from the state has noted, in California strict product liability law, "the general rule is that strict liability for failure to provide adequate warnings runs to distributors as well as manufacturers."[99]

Against this legal backdrop, GSK argues that Plaintiffs state no viable claims against McKesson because McKesson had no duty to warn Avandia consumers.  GSK asserts that this conclusion must be reached through the extension of California's "learned intermediary" doctrine, which offers a defense in strict liability to drug manufacturers if they properly warn prescribing physicians of a drug's risks.[100]  GSK thus ignores the logical rulings of multiple federal district courts considering California law that the learned intermediary defense simply does not apply where a plaintiff alleges "that the manufacturer failed to adequately warn doctors of the danger of the drug,"[101] as Plaintiffs have done here.  Indeed, due to the nature of Plaintiffs' claims against GSK, the learned intermediary doctrine appears to be inapplicable to any defendant, including McKesson.  Next, GSK argues that McKesson can have no duty to warn under California law because FDA regulations preclude it, as a distributor, from participating in providing warnings to drug consumers.  However, the Supreme Court of California has ruled that

---

[96] Id. at 1116.

[97] Murphy v. E.R. Squibb & Sons, Inc., 40 Cal. 3d 672, 680-81 (Cal. 1985).

[98] See Maher, 2007 WL 2330713, at *3 (citing Daly v. General Motors Corp., 20 Cal. 3d 725, 739 (Cal. 1978)).

[99] Martin v. Merck & Co., Inc., No 05-750, 2005 WL 1984483, at *3 (E.D. Cal. Aug. 15, 2005)

[100] See Stevens v. Parke, Davis & Co., 9 Cal. 3d 51, 65 (Cal. 1973).

[101] In re Fosamax, 2008 WL 2940560, at *7 (citing Martin, 2005 WL 1984483, at *3).

"mere compliance" with FDA regulations as to labels or warnings accompanying drugs "may not be sufficient to immunize the manufacturer or supplier of the drug from liability."[102]  At a minimum, this statement throws into significant doubt the broad preemption theory forwarded by GSK as to McKesson.  The frail and contingent nature of this and GSK's former argument reflect, at bottom, an uncertainty as to the potential duties and concomitant bases for liability that attach to a distributor such as McKesson under California law.  In the face of this uncertainty, the Court cannot hold that it is "obvious according to the settled rules"[103] of California that McKesson's joinder in this action is legally fraudulent.

Finally, GSK asserts that all but the first named Plaintiff should be severed, and each Plaintiff considered separately for remand purposes, due to Plaintiffs' "fraudulent misjoinder."  As noted, the Court considers that the joinder law of California must guide any inquiry into the propriety of the joinder herein, as California is where this action was originally filed.  GSK has presented no case regarding the application of the California joinder standard, while Plaintiffs have presented one.  That opinion, from the Fosamax Multi-District Litigation,[104] points out that while the applicable California joinder rule has similar language to that of Federal Rule of Civil Procedure 20,[105] "California's joinder rules are interpreted more liberally,"[106] and

---

[102] Stevens, 9 Cal. 3d at 65.

[103] Boyer, 913 F.2d at 111-12.

[104] In re Fosamax, 2008 WL 2940560, at *8.

[105] See CAL. CODE CIV. P. § 378(a), which states, in relevant part, "[a]ll persons may join in one action as plaintiffs if . . . [t]hey assert any right to relief . . . in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action."

[106] In re Fosamax, 2008 WL 2940560, at *8 (citing Osborn v. Metro. Life Ins.Co., 341 F. Supp. 2d 1123, 1128 (E.D. Cal. 2004)).

are satisfied by "<u>any</u> factual relationship between the claims joined."[107]  It would appear that Plaintiffs' claims herein meet this permissive standard, as they allege that the same or similar fraudulent or otherwise tortious conduct by Defendants caused their similar injuries.  In any event, GSK has not met its heavy burden of demonstrating that California would not permit the joinder in question, which leads to the Court's final point.

After remand, which will be ordered here, GSK may press its arguments as to the charged misjoinder of Plaintiffs in California state court.  California courts are far more experienced in the pure procedural law of that state than any federal court, as federal courts rarely have occasion to consider or apply such state rules.  If the California court were to agree that Plaintiffs are misjoined and sever them, GSK could then seek to remove any action in which diversity jurisdiction was present.

In light of the foregoing analysis, and in sum, the Court rules that McKesson is not fraudulently joined as a defendant in this action, and declines to sever Plaintiffs on grounds of fraudulent misjoinder, such that remand is required both pursuant to the forum defendant rule and for lack of subject matter jurisdiction.

The Court also finds that, due to the material similarities in the core claims against McKesson and relationships between the respective plaintiffs in the remaining California actions involving multiple plaintiffs, the preceding analysis and rulings may appropriately be applied to these cases, as follows.

**b.  <u>Ayala-Castro, et al.</u>, 2:08-cv-05116**

---

[107] <u>Id.</u> (quoting CAL. PRAC. GUIDE CIV. PRO. BEFORE TRIAL Ch. 2-C, 2:222-23 (2008); and <u>State Farm Fire & Cas. Co. v. Superior Court</u>, 45 Cal. App. 4th 1093, 1113 (Cal. App. Ct. 1996) (emphasis in original)).

Complete diversity is lacking due to the presence of California citizens the Ayala-Castros, along with McKesson.  As in the <u>Bone</u> matter and for the same reasons stated in the Court's analysis of that case, GSK has not demonstrated the fraudulent joinder of McKesson nor the fraudulent misjoinder of Plaintiffs.  Accordingly, remand will be ordered for lack of subject matter jurisdiction and no Plaintiffs will be severed from this action.

### c. <u>Boone</u>, 2:08-cv-01981

Although complete diversity exists in this action involving a lone Nevada Plaintiff, the case was removed from California court after McKesson was properly joined and served, and hence in violation of the forum defendant rule.  Because GSK has failed to demonstrate the fraudulent joinder of McKesson, as seen previously, the action will be remanded pursuant to 28 U.S.C. § 1441(b).

### d. <u>Bowles, et al.</u>, 2:08-cv-01733

The presence of California Plaintiff McGary and California Defendant McKesson destroys complete diversity and requires remand unless, as GSK argues, McKesson was fraudulently joined.  Likewise, the removal of this case from California state court violated the forum defendant rule of 28 U.S.C. § 1441(b) unless McKesson's joinder was fraudulent.  However, as in the <u>Bone</u> matter and for the same reasons stated in the Court's analysis of that case, GSK has not met its burden of demonstrating the fraudulent joinder of McKesson.  Nor has GSK established that the twelve Plaintiffs were fraudulently misjoined under California law, again relying on the apposite analysis from the <u>Bone</u> discussion, above.  Therefore, no Plaintiff shall be severed from this action and it will be remanded for violation of the forum defendant rule and lack of subject matter jurisdiction.

### e. Cross, et al., 2:08-cv-05227

Complete diversity is lacking in this action due to the presence of numerous California Plaintiffs and one Pennsylvania Plaintiff, along with McKesson and GSK. Because GSK has failed to demonstrate the fraudulent joinder of McKesson, as seen previously, the action will be remanded for lack of subject matter jurisdiction. Also, because GSK has failed to establish the fraudulent misjoinder of Plaintiffs, the presence of the Pennsylvania Plaintiff likewise necessitates remand, and no Plaintiff will be severed prior to remand.

### f. Fisher, 2:08-cv-01729

Although complete diversity exists in this action involving a lone Texas Plaintiff, the case was removed from California court after McKesson was properly joined and served, in violation of the forum defendant rule. Because GSK has failed to demonstrate the fraudulent joinder of McKesson, as seen previously, the action will be remanded pursuant to 28 U.S.C. § 1441(b).

### g. Hall, 2:08-cv-01727

Although complete diversity exists in this action involving a lone South Carolina Plaintiff, the case was removed from California court after McKesson was properly joined and served, in violation of the forum defendant rule. Because GSK has failed to demonstrate the fraudulent joinder of McKesson, as seen previously, the action will be remanded pursuant to 28 U.S.C. § 1441(b).

### h. Hefner, et al., 2:08-cv-01732

Hefner involves two Plaintiffs, neither from California or Pennsylvania, and names GSK and McKesson as Defendants. It was filed in California state court, and removed by

43

GSK before any Defendant was served.  Because removal occurred before any Defendant was served, the Court will not ignore the Defendants' citizenship for purposes of the forum defendant rule of 28 U.S.C. § 1441(b), and will remand the action under that rule.

### i.  Jefferson, 2:08-cv-01728

Although complete diversity exists in this action involving a lone North Carolina Plaintiff, the case was removed from California court after McKesson was properly joined and served, in violation of the forum defendant rule.  Because GSK has failed to demonstrate the fraudulent joinder of McKesson, as seen previously, the action will be remanded pursuant to 28 U.S.C. § 1441(b).

### j.  Johnson, et al., 2:08-cv-00835

The presence of several California Plaintiffs along with McKesson destroys diversity and calls for remand because, as in the Bone matter and for the same reasons stated in the Court's analysis of that case, GSK has not demonstrated the fraudulent joinder of McKesson.  Remand is also required pursuant to the forum defendant rule, since the case was removed from California court after McKesson was properly joined and served.  Finally, the Court cannot find that Plaintiffs were fraudulently misjoined, and thus declines to sever any Plaintiff from the action prior to remand.

### k.  Khanna, 2:08-cv-02884

Complete diversity is lacking in this action due to the presence of the California Plaintiff and McKesson.  Because GSK has failed to demonstrate the fraudulent joinder of McKesson, as seen previously, the action will be remanded for lack of subject matter jurisdiction.

### l.  Mitchell, et al., 2:08-cv-04235

44

The presence of California Plaintiffs along with McKesson destroys diversity and requires remand because, as seen previously, GSK has not demonstrated the fraudulent joinder of McKesson.  Remand is also required pursuant to the forum defendant rule, since the case was removed from California court after McKesson was properly joined and served.  Finally, the Court cannot find that Plaintiffs were fraudulently misjoined, and thus declines to sever any Plaintiff from the action prior to remand.

### m. **Thornton**, 2:08-cv-01730

Although complete diversity exists in this action involving a lone Ohio Plaintiff, the case was removed from California court after McKesson was properly joined and served, in violation of the forum defendant rule.  Because GSK has failed to demonstrate the fraudulent joinder of McKesson, as seen previously, the action will be remanded pursuant to 28 U.S.C. § 1441(b).

### n. **Upshaw**, 2:08-cv-01731

Although complete diversity exists in this action involving a lone Kansas Plaintiff, the case was removed from California court after McKesson was properly joined and served, in violation of the forum defendant rule.  Because GSK has failed to demonstrate the fraudulent joinder of McKesson, as seen previously, the action will be remanded pursuant to 28 U.S.C. § 1441(b).

### o. **Williams, et al.**, 2:08-cv-02943

Complete diversity is absent due to the presence of California Plaintiffs Williams and Pallanck along with McKesson.  As in the Bone matter and for the same reasons stated in the Court's analysis of that case, GSK has not demonstrated the fraudulent joinder of McKesson nor

the fraudulent misjoinder of Plaintiffs.  Accordingly, no Plaintiffs will be severed from this action and remand will be ordered for lack of subject matter jurisdiction.

    2.  **The New York Case**

        Plaintiff Mick moves for remand for lack of subject matter jurisdiction, noting that both she and named Defendant Rite Aid are citizens of New York.  GSK does not dispute Plaintiff's assertions as to party citizenship, but argues that Rite Aid's citizenship should be ignored because it was fraudulently joined.  It contends Rite Aid's fraudulent joinder is demonstrated by the fact that there is no colorable basis under New York law for Plaintiff's claims against it.

        Mick names Rite Aid, jointly with GSK, in claims of, <u>inter alia</u>, strict product liability, breach of warranty, and negligence.  In the Complaint's "First Cause of Action" Mick alleges that Avandia was ". . . distributed, marketed and sold" by Defendants Rite Aid and GSK, used by her decedent, and that her decedent's claimed injuries "were caused solely by the negligence of the Defendants in failing to use reasonable care in designing, making, manufacturing, inspecting, testing, distributing, marketing and selling" Avandia.[108]  GSK argues that as a matter of New York law, these pleadings fail to allege a colorable claim against Rite Aid.  As seen previously, the Court applies the fraudulent joinder analysis of the Third Circuit to the issue.  Thus, GSK has the heavy burden of demonstrating that Rite Aid's joinder is fraudulent, and that such is obvious under the settled rules of New York.

        The parties present directly conflicting case law from the federal judiciary sitting in New York in support of their positions.  GSK offers the apt case <u>Negrin v. Alza</u>, in which a

---

[108] Pls.' Omnibus Memorandum, Ex. M (<u>Mick</u> Complaint, ¶¶ 5, 6, 8).

court in the Southern District of New York ruled that a New York pharmacy was fraudulently joined to a pharmaceutical product liability action and thus denied a motion to remand premised on lack of diversity.[109]  The <u>Negrin</u> court noted that under established New York law a pharmacy may be liable in negligence to an injured customer for certain acts of professional carelessness, such as incorrectly filling a prescription.  But it ruled that where a plaintiff merely made a bald claim of negligence by the pharmacy and thus failed to allege that the named pharmacy "did anything other than correctly fill a prescription, and dispense the product as packaged by Defendant Manufacturer," the claim was not colorable as pleaded.[110]

        To counter, Plaintiff forwards the Decision and Order of United States Magistrate Judge McCarthy of the Western District of New York in the case <u>Locicero v. Sanofi-Aventis U.S., Inc., et al.</u>, which holds that a plaintiff may possibly state a cause of action in negligence against a pharmacy under New York law by alleging a failure "to use reasonable care in . . . distributing, marketing and selling the product."[111]  Mick, here, has copied this pleading, approved as sufficient in <u>Locicero</u>.  However, the ruling in <u>Locicero</u> is not as straightforward as Mick contends.  That court began by acknowledging that, to state a negligence cause of action against a pharmacy in New York, a plaintiff must allege "that the pharmacy altered the product or failed to fill the prescription as written," or, presumably, engaged in some comparable form of professional carelessness.[112]  The court did not need to add that, at present, the plaintiff's

---

[109] No. 98-4772, 1999 WL 144507, at *4-*5 (S.D.N.Y. Mar. 17, 1999).

[110] <u>Id.</u> at *5.

[111] No. 07-cv-618 (WMS - JJM) Docket No. 19 (W.D.N.Y. Order of McCarthy, Mag. J., Nov. 7, 2007).

[112] <u>Id.</u> at *5.

conclusory pleadings fell short of this mark.  The court then noted that New York's pleading

rules are liberal, and countenance that "bare-boned" allegations in a complaint may be

supplemented by a bill of particulars under New York Civil Practice Law & Rule 3043.[113]

Because Plaintiff's pleadings were capable of being supplemented through a bill of particulars,

the court reasoned, "I cannot conclude at this early stage of the case that there is no possibility

that plaintiff's bill of particulars will allege either that [the defendant] Pharmacy altered the

product, or that it failed to fill the prescription as written."[114]  On this speculative, contingent

basis, the court ruled that the plaintiff's pleadings entailed a colorable claim against the

defendant pharmacy.

       The Court declines to follow this speculative reasoning in the present case.

Indeed, the Court views Negrin and Locicero as agreeing as to the baseline requirements of a

colorable negligence claim against a pharmacy under New York law, but disagreeing as to what

actual or potential filings or pleadings may be considered in the fraudulent joinder analysis.  The

sounder approach, in this Court's view, is that of the Negrin court, which looked to the pleadings

actually filed by the plaintiff in determining whether the defendant pharmacy had been

fraudulently joined.  Guided by the application of New York law in Negrin, the Court finds that

Mick's bald allegation that Rite Aid "fail[ed] to use reasonable care in . . . distributing, marketing

and selling" Avandia, does not satisfy New York's pleading standard for a negligence claim

against a pharmacy.  GSK has thus demonstrated that Rite Aid was fraudulently joined.  Because

diversity jurisdiction exists over this action if the citizenship of Rite Aid is disregarded,

---

[113] Id. at *4-*5.

[114] Id.

Plaintiff's Motion to Remand for lack of subject matter jurisdiction will be denied.

### 3.  **The North Carolina Case**

Plaintiffs in this action, <u>Massey</u>, all citizens of North Carolina, move for remand for lack of subject matter jurisdiction.  They claim diversity jurisdiction is absent because Defendant GSK is a citizen of North Carolina.

Under 28 U.S.C. 1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."[115]  For present purposes, the Court looks to party citizenship at the time this action was filed in the North Carolina court, May 27, 2008,  and at the time GSK filed the petition to remove it, June 26, 2008.[116]  As previously noted, GSK is not incorporated under the law of North Carolina.

A corporation may have only one "principal place of business."[117]  In the Third Circuit, the state where such is located is determined through the "center of corporate activities" test, also known as the <u>Kelly</u> test.  The <u>Kelly</u> test turns on the location of "the headquarters of day-to-day corporate activities and management."[118]  Of "lesser importance" but still worthy of note are factors such as the "physical location of . . . plants and the like."[119]

The Court accepts the evidence submitted by GSK that, at the relevant time, its

---

[115] 28 U.S.C. 1332(c)(1).

[116] <u>See</u> <u>Liakakos v. Cigna Corp.</u>, 704 F. Supp. 583, 586 (E.D. Pa. 1988) (citing <u>Kerstetter v. Ohio Cas. Ins. Co.</u>, 496 F. Supp. 1305, 1307 (E.D. Pa. 1980)).

[117] <u>Kelly v. U.S. Steel Corp.</u>, 284 F.2d 850, 853 (3d Cir. 1960).  For reasons that are unclear to the Court, Plaintiffs unhelpfully couch their arguments in the law of the Court of Appeals for the Fourth Circuit.

[118] <u>Id.</u> at 854.

[119] <u>Id.</u>

principal place of business was Pennsylvania.  This evidence shows that the majority of GSK's

officers and directors, who collectively determine and direct GSK's corporate activities at the

highest level, are located in Pennsylvania; that GSK's Finance, Treasury, Tax, Information

Technology and Consumer Healthcare departments are predominantly located in and operated

out of the company's corporate offices in Philadelphia, Pennsylvania; that GSK spends more on

research and development activities in Pennsylvania than it does in North Carolina, and that there

are more employees engaged in such activities in Pennsylvania than in North Carolina.[120]  By

contrast, Plaintiffs show that GSK maintains a second corporate office in North Carolina at

which significant aspects of GSK's business are conducted, including most functions relating to

the development and production of Avandia.  While Plaintiffs make strong showings as to

research and production facilities in North Carolina, they do not adduce facts showing that

GSK's overall corporate management and direction is centered in that state.  Rather, GSK makes

such showing with respect to Pennsylvania.

Because GSK was in all senses a citizen of Pennsylvania at the time this action

was removed, there is complete diversity among the parties, and Plaintiffs' motion to remand for

lack of subject matter jurisdiction will be denied.

---

[120] Def.'s Mem. Opp. in <u>Massey</u>, Doc. No. 280, Ex. E (Aug. 5, 2008 Decl. of GSK Vice President and
Secretary Carol Ashe).

### III.  CONCLUSION

For the foregoing reasons, all cases under this Memorandum and Order removed from California will be remanded, the Motion to Remand in the <u>Mick</u> case from New York will be denied, and so will the Motion to Remand in the <u>Massey</u> case from North Carolina.  An appropriate Order follows.

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| **IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | : | **MDL NO. 1871** |
|  | : | **07-md-1871** |

_____

**THIS DOCUMENT RELATES TO:**

| | | |
|---|---|---|
| *Ayala-Castro, et al. v. GlaxoSmithKline, et al.* | : | **2:08-cv-05116** |
| *Bone, et al. v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-01726** |
| *Boone v. GlaxoSmithKline, et al.* | : | **2:08-cv-01981** |
| *Bowles, et al. v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-01733** |
| *Cross, et al. v. GlaxoSmithKline, et al.* | : | **2:08-cv-05227** |
| *Fisher v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-01729** |
| *Hall v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-01727** |
| *Hefner, et al. v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-01732** |
| *Jefferson v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-01728** |
| *Johnson, et al. v. GlaxoSmithKline, et al.* | : | **2:08-cv-00083** |
| *Khanna v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-02884** |
| *Massey, et al. v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-04981** |
| *Mick v. GlaxoSmithKline plc, et al.* | : | **2:08-cv-05019** |

| | | |
|---|---|---|
| *Mitchell, et al. v. GlaxoSmithKline, et al.* | : | **2:08-cv-04235** |
| | : | |
| *Thornton v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-01730** |
| | : | |
| *Upshaw v. SmithKline Beecham Corp. d/b/a GlaxoSmithKline, et al.* | : | **2:08-cv-01731** |
| | : | |
| *Williams, et al. v. GlaxoSmithKline, et al.* | : | **2:08-cv-02943** |
| | : | |

## <u>ORDER</u>

**AND NOW**, this 25th day of February, 2009, upon consideration of the Motions to Remand filed in the above-captioned individual actions, and all briefs and argument submitted in support thereof or opposition thereto, and in accordance with the attached Memorandum, it is hereby **ORDERED** as follows:

1. The Motion to Remand in <u>Ayala-Castro</u> (case number 2:08-cv-5116) [MDL Master Docket Doc. No. 255] is **GRANTED** and the action is **REMANDED** to the Superior Court of the State of California for the County of San Bernadino;

2. The Motion to Remand in <u>Bone</u> (case number 2:08-cv-1726) [MDL Master Docket Doc. No. 258] is **GRANTED** and the action is **REMANDED** to the Superior Court of the State of California for the County of San Francisco;

3. The Motion to Remand in <u>Boone</u> (case number 2:08-cv-1981) [MDL Master Docket Doc. No. 128] is **GRANTED** and the action is **REMANDED** to the Superior Court of the State of California for the County of Los Angeles;

4. The Motion to Remand in <u>Bowles</u> (case number 2:08-cv-1733) [MDL Master Docket Doc. No. 259] is **GRANTED** and the action is **REMANDED** to the Superior Court of the State of California for the County of San Francisco;

5.  The Motion to Remand in <u>Cross</u> (case number 2:08-cv-5227) [Individual Case Docket Doc. No. 2] is **GRANTED** and the action is **REMANDED** to the Superior Court of the State of California for the County of Los Angeles;

6.  The Motion to Remand in <u>Fisher</u> (case number 2:08-cv-1729) [MDL Master Docket Doc. No. 260] is **GRANTED** and the action is **REMANDED** to the Superior Court of the State of California for the County of San Francisco;

7.  The Motion to Remand in <u>Hall</u> (case number 2:08-cv-1727) [MDL Master Docket Doc. No. 261] is **GRANTED** and the action is **REMANDED** to the Superior Court of the State of California for the County of San Francisco;

8.  The Motion to Remand in <u>Hefner</u> (case number 2:08-cv-1732) [MDL Master Docket Doc. No. 262] is **GRANTED** and the action is **REMANDED** to the Superior Court of the State of California for the County of San Francisco;

9.  The Motion to Remand in <u>Jefferson</u> (case number 2:08-cv-1728) [MDL Master Docket Doc. No. 263] is **GRANTED** and the action is **REMANDED** to the Superior Court of the State of California for the County of San Francisco;

10.  The Motion to Remand in <u>Johnson</u> (case number 2:08-cv-835) [MDL Master Docket Doc. No. 253] is **GRANTED** and the action is **REMANDED** to the Superior Court of the State of California for the County of Riverside;

11.  The Motion to Remand in <u>Khanna</u> (case number 2:08-cv-2884) [Individual Case Docket Doc. No. 5] is **GRANTED** and the action is **REMANDED** to the Superior Court of the State of California for the County of San Francisco;

12.  The Motion to Remand in <u>Mitchell</u> (case number 2:08-cv-4235) [MDL Master Docket Doc. No. 254] is **GRANTED** and the action is **REMANDED** to the Superior

Court of the State of California for the County of Sacramento;

13.  The Motion to Remand in <u>Thornton</u> (case number 2:08-cv-1730) [MDL Master Docket Doc. No. 264] is **GRANTED** and the action is **REMANDED** to the Superior Court of the State of California for the County of San Francisco;

14.  The Motion to Remand in <u>Upshaw</u> (case number 2:08-cv-1731) [MDL Master Docket Doc. No. 265] is **GRANTED** and the action is **REMANDED** to the Superior Court of the State of California for the County of San Francisco;

15.  The Motion to Remand in <u>Williams</u> (case number 2:08-cv-2943) [Individual Case Docket Doc. No. 10] is **GRANTED** and the action is **REMANDED** to the Superior Court of the State of California for the County of Los Angeles;

16.  The Motion to Remand in <u>Mick</u> (case number 2:08-cv-5019) [Noticed in MDL Master Docket Doc. No. 295] is **DENIED**;

17.  The Motion to Remand in <u>Massey</u> (case number 2:08-cv-4981) [MDL Master Docket Doc. No. 266] is **DENIED**.

It is so **ORDERED.**

**BY THE COURT:**

/s/ Cynthia M. Rufe

_____

**CYNTHIA M. RUFE, J.**